UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF HOLYOKE, et al.,<br><br>        Defendants. | Civil Action No. 24-30018-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 19, 24, and 27)

January 31, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Jane Doe ("Plaintiff") brings this action against the City of Holyoke ("Holyoke"), Holyoke Public Schools ("HPS"), and the state appointed receiver-superintendent for the Holyoke Public School system, Anthony Soto ("Soto"). She asserts Holyoke and HPS denied her rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983 (Count I), retaliated against her for exercising rights secured by the First Amendment to the United States Constitution in violation of Section 1983 (Count II), and deprived her of the right to an education free from sex-based harassment in violation of Title IX (Count III). Plaintiff also alleges Soto denied her rights secured by the First and Fourteenth Amendments to the United States Constitution in violation of Section 1983 (Count IV).

Defendants responded by filing separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Holyoke argues it lacks policymaking authority over the school system by

operation of state law, and therefore cannot be liable under Section 1983 pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). For similar reasons, Holyoke contends Plaintiff's Title IX claim is foreclosed by its lack of actual knowledge regarding any harassment. HPS raises substantially the same argument with respect to the Section 1983 claim, asserting it cannot be liable pursuant to *Monell*, while also arguing Plaintiff's Title IX claim fails because the complaint does not adequately allege the existence of severe and pervasive harassment or deliberate indifference. Finally, Soto seeks dismissal because, he says, Plaintiff has not stated a claim for supervisory liability under Section 1983. In the alternative, he suggests qualified immunity applies.

For the following reasons, the court grants Holyoke's motion in its entirety, rendering it dismissed from this action. As to HPS and Soto, the motions are granted in part and denied in part.

## II.   BACKGROUND[1]

Plaintiff, who is female and identifies as a member of the LGBTQ community, attended Holyoke High School ("HHS") beginning in the fall of 2019. She was the only female member of HHS's interscholastic football team. Among her teammates was a male classmate, D.L., who sexually assaulted her behind HHS's "snack shack" during the school's 2018 Thanksgiving Day game. D.L. and Plaintiff were in eighth grade at the time, meaning she was not yet enrolled at HHS. Plaintiff was also sexually assaulted in January of 2020 by S.M., a senior student at HHS, who drove Plaintiff from school grounds to the Holyoke Mall, before sexually assaulting her in the parking lot. At the time of the second sexual assault, Plaintiff was a student at HHS.

In October of 2021, Plaintiff wrote an article for the HHS school newspaper, The Herald, detailing discrimination she experienced as the only female member of the school's football team. She decided to write this piece after learning another female student was sexually assaulted by one of

---

[1] The court recites the factual background set forth in Plaintiff's first amended complaint. (Dkt. No. 15.)

Plaintiff's football teammates. The Herald's faculty advisor approved publication of the article, but it was ultimately removed from the school paper.

Around the same time Plaintiff authored The Herald article, students at HHS organized a walk-out to protest the school's lack of action in response to several sexual assaults. Plaintiff participated in the walk-out. Plaintiff's participation was not passive in manner; she gave a speech to the assembled crowd of students. In response, Kevin Bouchard, an HHS employee, informed her she was no longer allowed to continue in her role as a class officer. She was the only student punished because of the walk-out.

Starting in the fall of 2021, Plaintiff was subject to bullying by her peers. Students used specific slurs related to her sexuality, as well as other offensive language typically used to stigmatize females. These incidents occurred in the halls, the lunchroom, and the women's bathroom. Plaintiff reported the harassment to an HHS employee, Lynn Bouchard. Ms. Bouchard assured Plaintiff she would bring a stop to the harassment, but it continued throughout her time at HHS.

Before Plaintiff's senior football season, HHS attempted to condition her return to the team upon participation in a "restorative" meeting with an HHS assistant coach and D.L., her former assailant. This coach was particularly angered by Plaintiff's article in the school paper. She was ultimately allowed to return to the team, but her teammates treated her as a pariah and called her a liar. Plaintiff was also benched by the coaching staff for most of the season.

### III.  LEGAL STANDARD

As this matter is before the court on Defendants' motions to dismiss pursuant to Rule 12(b)(6), the court applies the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, the complaint must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When evaluating whether dismissal is appropriate under Rule 12(b)(6), the court must credit well-pleaded factual allegations as true and draw all reasonable inferences from those facts in the non-moving party's favor. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). "Well-pleaded facts must be non-conclusory and non-speculative." *Barchock v. CVS Health Corp.,* 886 F.3d 43, 48 (1st Cir. 2018) (internal quotation omitted). For a claim to proceed, the complaint must allege enough facts to plausibly establish each material element of the claim and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (citing *Twombly*, 550 U.S. at 555). Generally, the court's review is limited to allegations in the complaint, but it "may [also] consider 'implications from documents attached to or fairly incorporated into the complaint,'" *Barchock*, 886 F.3d at 48 (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)) (alteration added), as well as "matters of public record, and other matters susceptible to judicial notice," *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) (internal quotation marks omitted).

## IV.  DISCUSSION

### A.  Title IX

As Plaintiff conceded her Section 1983 claims against Holyoke and HPS were not legally viable in light of *Doe 1 v. City of Holyoke,* 725 F. Supp. 3d 115 (D. Mass. 2024), only her Title IX claim remains against these entities.[2] Although Title IX does not explicitly provide for a private right of action, "[t]he

---

[2] Counts I and II are therefore dismissed.

4

Supreme Court has recognized an implied private right of action under Title IX through which an aggrieved party may seek money damages against an educational institution." *Grace v. Bd. of Trustees, Brooke E. Bos.*, 85 F.4th 1, 10 (1st Cir. 2023). To prevail, she must demonstrate she was "(1) subjected to harassment (2) on the basis of sex; (3) that the harassment was sufficiently severe and pervasive to create an abusive educational environment; and (4) that a school official authorized to take corrective action … exhibited deliberate indifference to the harassment." *Id.* at 11 (internal quotation marks omitted).

1. *City of Holyoke*

Holyoke is not an educational institution, and it does not have a school committee acting pursuant to its municipal authority. It cannot therefore be sued under Title IX in these circumstances. *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 65 (1st Cir. 2002); *see also T.K. v. Town of Barnstable,* No. 17-CV-11781-DJC, 2018 WL 3748166, at *4 (D. Mass. Aug. 6, 2018) (declining to hold a municipality liable under Title IX). Moreover, because Holyoke was stripped of its policymaking authority over HPS by operation of Massachusetts law, there is no plausible way to allege Holyoke was deliberately indifferent to Plaintiff's harassment. *See Doe 1*, 725 F. Supp. 3d at 127. This standard requires that a plaintiff show the "funding recipient" had "actual knowledge" of the harassment and "that the official who is informed of the harassment be an appropriate person—an official of the recipient entity with authority to take corrective action to end the harassment." *Grace*, 85 F.4th at 11 (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 74 (1st Cir. 2011)). Plaintiff does not (and cannot) adequately allege any city official (as opposed to HPS officials) had actual knowledge of her harassment. But, even if actual knowledge were adequately alleged, city officials are not "official[s] of the recipient entity with authority to take corrective action to end the harassment," as Holyoke's municipal authority over its school system was extinguished pursuant to Mass. Gen. Law ch. 69, § 1K(a). *Id.* Accordingly, Holyoke's motion to dismiss is granted.

5

*2. HPS*

In contrast, HPS may be sued under Title IX's implied private right of action. HPS argues, however, that Plaintiff's Title IX claim fails to adequately allege two essential elements of the claim—severe and pervasive harassment and deliberate indifference. While a close call, the court finds Plaintiff's complaint is adequate when viewed under the Rule 12(b)(6) standard.

As to the first argument, HPS may be liable for deliberate indifference to "harassment … 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Porto v. Town of Tewksbury*, 488 F.3d 67, 72 (1st Cir. 2007) (quoting *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 644 (1999)). Plaintiff alleges she publicly discussed the discrimination she faced as the only female member of the HHS football team; this then triggered a sustained campaign of harassment by other students. This harassment centered on repeated use of a slur aimed at dehumanizing and denigrating members of the LGBTQ community. *Cf. Grace*, 85 F.4th at 12 (holding a reasonable trier of fact could conclude a school district's failure to prevent use of "homophobic epithets" was unreasonable). Students also used degrading language historically relied upon to single out females for social ostracization and stigmatization. *See Roy v. Correct Care Sols., LLC,* 914 F.3d 52, 63 (1st Cir. 2019) (explaining "the use of sexually degrading, gender-specific epithets" is harassment based on sex); *Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 229 (1st Cir. 2007) (collecting "[a] raft of case law" holding the same); *see also McCann on behalf of J.M. v. York Sch. Dep't,* 365 F. Supp. 3d 132, 140-41 (D. Me. 2019) (noting pejorative language must be examined in context to understand its harassing impact). [3]

---

[3] The complaint alleges two sexual assaults. As HPS notes, the first sexual assault happened before Plaintiff was enrolled at HHS, and the second sexual assault occurred off-campus and outside school hours. Nevertheless, the court finds these claims lend credence to Plaintiff's allegations that her harassment went beyond mere banter or teasing. Several of the terms repeatedly used by students imply sexual promiscuity on the part of Plaintiff. In the context of Plaintiff's open discussion of these

In response, HPS correctly notes a "one-off interaction with a rogue student, or mere childish teasing" cannot trigger liability under Title IX. *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 10 (1st Cir. 2020). However, when viewed in a light most favorable to Plaintiff, the allegations support a plausible inference that the harassment was not the work of a rogue student, but rather part of an orchestrated campaign against Plaintiff because of her decision to speak out about sexual assault and discrimination. And given the age of the students involved, the specific words used go beyond mere childish teasing, as high school students are well aware of the intended (and actual) impact of the epithets directed at Plaintiff. Plaintiff thus plausibly alleges she suffered severe and pervasive harassment.

Turning to deliberate indifference, Plaintiff adequately alleges HPS officials with the power to take corrective action were aware of her harassment and failed to take such action. Plaintiff informed HPS employee Lynn Bouchard about the ongoing harassment. Bouchard told Plaintiff she would act, but then allegedly did nothing. Similarly, Plaintiff's mother informed Soto about conduct which, in the context of Plaintiff's other allegations, placed HPS on notice that all was not well for Plaintiff at HHS. Soto then allegedly did nothing. Finally, Plaintiff's allegation officials demanded she engage in a "restorative meeting" before returning to the football team supports a plausible inference HPS knew about the ongoing issues. While HPS argues this meeting constitutes evidence it did something, the court is not prepared to conclude at this early stage that requiring Plaintiff to meet her alleged sexual assailant and an outwardly hostile adult football coach satisfied HPS's Title IX obligations. HPS's motion to dismiss Count III is denied.

**B.     Section 1983**

Plaintiff's sole remaining Section 1983 claim, Count IV, alleges Anthony Soto violated Plaintiff's First and Fourteenth Amendment rights. "To recover under § 1983, a plaintiff must prove

---

past sexual assaults, this language is plausibly construed as an attempt at blaming the victim for the assaults. And, when viewed in this light, the allegations further support her Title IX claim at this stage.

7

that a deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States was carried out by persons acting under color of state law." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (quoting 42 U.S.C. § 1983). "Personal capacity claims 'must be premised on . . . [a defendant's] own acts or omissions' because, under 42 U.S.C. § 1983, supervisors are not automatically liable for actions of their subordinates." *Doe 1*, 725 F.Supp.3d at 126 (quoting *Justiniano v. Walker*, 986 F.3d 11, 20 (1st Cir. 2021)). Rather, a supervisor may be liable when a subordinate abridges a plaintiff's constitutional rights and "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016) (internal quotation marks omitted; alterations in original).

Here, Plaintiff advances three theories of constitutional liability: (1) the sexual assaults by D.L. and S.M., (2) the bullying she suffered at the hands of other students, and (3) retaliation for The Herald article and her role in the walk-out. The first two theories do not state a constitutional claim against Soto or his subordinates, as "[i]n general, the state's failure to protect an individual from private harm does not give rise to a due process claim." *Welch v. City of Biddeford Police Dep't*, 12 F.4th 70, 75 (1st Cir. 2021) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). While there are two exceptions to this general rule—the "state created danger" doctrine and the "special relationship" doctrine—Plaintiff's complaint does not adequately invoke either exception. *See Irish v. Fowler ("Irish II")*, 979 F.3d 65, 74-75 (1st Cir. 2020) (recognizing the state created danger doctrine); *Hootstein v. Amherst-Pelham Reg'l Sch. Comm.*, 361 F. Supp. 3d 94, 111 n. 9 (D. Mass. 2019) (discussing the special relationship doctrine). There are no well-pled factual allegations that a named state actor "affirmatively acted to create or enhance a danger," as required to invoke the state created danger doctrine, *Irish II*, 979 F.3d at 75, and the conduct alleged does not qualify as the type of "narrow circumstances" the

8

First Circuit hinted may justify invocation of the special relationship doctrine in the school setting, *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 297-98 (D. Mass. 2017) (discussing *Hasenfus v. LaJeunesse*, 175 F.3d 68 (1st Cir. 1999)).

Plaintiff's First Amendment retaliation theory does allege a viable constitutional deprivation. But there are no well-pled allegations supporting the notion Soto retaliated against Plaintiff for the article. Rather, the complaint alleges the City of Holyoke was responsible for this retaliation. (Dkt. No. 15, ¶¶ 22, 36.) This leaves only a theory of direct participation in, or deliberate indifference to, HPS's decision to remove Plaintiff from her role as a class officer over the HHS walk-out. Under the deliberate indifference standard, Plaintiff must show "[1] that [Soto] had knowledge of facts, from which [2] [he] can draw the inference [3] that a substantial risk of serious harm exists." *Id.* at 303 (internal quotation marks omitted; alterations added). The allegations are thin, but Plaintiff's participation in the walk-out can plausibly be viewed as widely known among HPS staff, students, and administrators. These staff and administrators answer to Soto in his role as receiver-superintendent, and it is therefore plausible he was aware of the high-profile walk-out. Moreover, the complaint alleges Plaintiff's removal occurred one to two weeks after the walk-out; this timeline is indicative of deliberative action by HPS staff before taking disciplinary action. It is plausible, at this stage of the litigation, to infer Soto was aware of these deliberations. And from these facts, Soto, or any reasonable superintendent in his position, would understand the actions taken by HPS officials in response to a high-profile protest could infringe on Plaintiff's valid First Amendment rights under the standard announced in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969). Plaintiff's Section 1983 claim thus narrowly alleges sufficient facts to survive a motion under Rule 12(b)(6), but only as to retaliation for her role in the walk-out.

## V.    CONCLUSION

For the foregoing reasons, Holyoke's motion to dismiss (Dkt. No. 19) is GRANTED in full.

HPS's motion to dismiss (Dkt. No. 24) is GRANTED in part and DENIED in part. Specifically, the motion is granted as to Plaintiff's Section 1983 claims but denied as to Plaintiff's Title IX claims. Soto's motion to dismiss (Dkt. No. 27) is GRANTED in part and DENIED in part. Plaintiff may proceed against Soto only insofar as her Section 1983 claim alleges unlawful retaliation for exercise of rights secured by the First Amendment to the United States Constitution for her role in the Holyoke High School walk-out.

    It is So Ordered.

                                                    /s/ Mark G. Mastroianni
                                                    MARK G. MASTROIANNI
                                                    United States District Judge